SCHICKLE *et al. v.* HAZARD *et al.*

*(Supreme Court, General Term, First Department.* December 29, 1890.)

1. ACTION ON NOTE—DEFENSES OF INDORSER—COUNTER-CLAIM—PLEADING.
    In an action on a note, where the makers set up counter-claims, the indorser alleged that he was an accommodation indorser, that the makers had a counter-claim, and that they were insolvent, and prayed that the amount found due thereon should be deducted from the amount due on the note. Plaintiffs' reply denied every allegation of the answer, and alleged a settlement of accounts with the makers. *Held,* that the insolvency of the makers was sufficiently denied by such general denial in the reply, and, in the absence of proof of such insolvency, the indorser could not avail himself of the counter-claim.

2. ESTOPPEL IN PAIS—EXECUTION OF NOTE.
    The execution of a note by contractors in full payment for material furnished them, with full knowledge of a delay in its delivery, precludes them, in an action on the note, from setting up a counter-claim for damages arising from such delay.

Appeal from judgment on report of referee.

Action by Schickle, Harrison & Co. against Henry C. Comegys, Jared E. Lewis, and Rowland N. Hazard, on several promissory notes. The action was tried before GEORGE C. LAY as referee, who filed the following opinion:

"The note sued on in this action was given in full payment of an account for iron pipe, which was received and used by the defendants in the construction of water-works at Chillicothe, Missouri. The defendants resist payment of the note, pleading a counter-claim for damages occasioned by the plaintiffs' alleged breach of a contract for the delivery of pipe. The contract embraced a proposal by the plaintiffs to furnish to the defendants cast-iron pipe, required for new water-works and new gas-works at Chillicothe and new water-works at Nebraska City, Nebraska; deliveries of pipe to be during May, June, July, and August, 1887. These works were prosecuted by the defendants Comegys & Lewis, simultaneously, under contracts with the cities of Chillicothe and Nebraska City. By the terms of the contract with Chillicothe, the defendants Comegys & Lewis were required to begin the construction of the water-works on or before the 1st day of January, 1887, and complete the same before the 1st day of July, 1887. By the terms of the contract with Nebraska City, the contractors' time to complete the whole system of water-works expired on the 2d day of September, 1887. There was no time fixed for the completion of the gas-works at Chillicothe. The contract for the pipe for those works was made on the 21st of February, 1887. As the time for the completion of the Chillicothe water-works expired first, the contractors desired the shipments of pipe to Chillicothe, and the completion of the water-works there, before the completion of the Nebraska City works, or the gas-works at Chillicothe. The plaintiffs were informed as to the time within which the contractors were required to complete the various works. The Chillicothe water-works were prosecuted with energy by the contractors, but the plaintiffs did not, prior to the 1st of July, furnish all the pipe required to finish the works, and the contractors were obliged to apply for an extension of time until the 1st of September. During the extended period from July 1st to September 1st the work proceeded with diligence, and, with the exception of one car-load of pipe, which was shipped August 27, 1887, and was received about September 3, 1887, and excepting also certain special orders, all the water-pipe was delivered by the plaintiffs prior to the 1st of September, and the contract of the plaintiffs, so far as the Chillicothe water-works were concerned, was substantially performed. The work at Nebraska City was not commenced until the 1st of June, the engineer's revised estimates of sizes and lengths not being sent to the plaintiffs until about June 3, 1887; and there is some evidence tending to show that by arrangement the shipments to Nebraska City were not to commence until June 1st. At any rate, shipments were not made to any great extent until about the 1st of July, when pipe-laying commenced. During the month of July about 2,000 feet of pipe were laid, and then the contractors were obliged to stop work for a time, from scarcity of pipe, until the latter part of August, when the pipe began to arrive regularly, and pipe-laying was resumed, and continued without interruption until the works were finished and accepted by the city on the 3d of November. After the completion of the Nebraska City works, the contractors proceeded with the Chillicothe gas-works, and completed them some time in January, 1888. According to the terms of the contract between the parties, the defendants Comegys & Lewis agreed to make payment as follows: ' On or before the 10th of each month settlements shall be made for the previous month's shipment of pipe, one-quarter in cash,' and three-quarters in notes secured by bonds on the several works. The defendants Comegys & Lewis, while not making the settlements strictly within the time limited, remitted to the plaintiffs checks and notes for various accounts, as follows: On August 8, 1887, they sent ' check for $2,462.74, and note at four months, August 10, 1887, for $7,542.-

16, in settlement of Chillicothe August acccount,' and on August 31st they sent certificate for 10 bonds to secure such note. On September 20, 1887, they remitted ' check for $4,838.08 in settlement of cash payment due on Nebraska City account.' On October 13, 1887, they wrote to plaintiffs as follows: ' We concluded to arrange with Mr. Hazard to indorse a four-months note in full payment of the Chillicothe account, and we herewith inclose you our note at four months, dated October 18th, for $14,542.17, to our own order, indorsed by Mr. Hazard, which we trust will be acceptable.' On January 26, 1888, they write: ' We inclose herewith our note at four months, January 2d, for' $6,383.79, in settlement of the Chillicothe account, as by inclosed statement.' On March 10, 1888, they write: ' We inclose herewith our two notes at four months,—one for $2,697.26, in settlement of the Nebraska City, and the other one for $3,417.13, in settlement of the Chillicothe, account.' The defendants set up in defense in this action two counter-claims: (1) For damages for delay in delivering pipe for the Nebraska City water-works. (2) For damages for delay in delivering the pipe for the Chillicothe gas-works. The plaintiffs reply to the counter-claim by averring an account stated, and settlement for pipe by delivery of checks and notes.

"*First.* Settlement of the accounts. Before considering the facts as to the alleged breach of the contract, we are confronted with the question, whether or not the defendants are barred and precluded, by giving notes in settlement of accounts, from asserting that they are not liable thereon. There is no dispute about the facts. The goods contracted for have all been delivered, and used by the contractors. The pipe is conceded to have been in good order when delivered, and no complaint is made as to character or quality. The facts as to failure of the plaintiffs to deliver the pipe contracted for in time were fully known to the defendants at the time of giving notes. There was no duress, fraud, or mistake. There is no evidence of any newly-discovered facts which affect the accuracy or justice of the accounts. There is, strictly speaking, no failure of consideration, for nothing has occurred since the making of the notes to change the relations of the parties, or to effect the validity of the obligations. The note in suit appears to have been given; indeed, the makers declare in so many words that ' they concluded to arrange with Mr. Hazard to indorse a four-months note in full payment of the Chillicothe account.' I am of the opinion that, in the absence of fraud and mistake, the giving of the note in suit ' in full payment of the Chillicothe account,' is conclusive upon the defendants, so far as the counter-claim relating to the Chillicothe gas-works is concerned, and that the defendants must be held to have waived all claims for damages arising out of the Chillicothe contract. As to the first counter-claim arising out of the Nebraska City contract, I am also of the opinion that the giving of the note, referred to in the letter of March 10, 1888, for $2,697.26, ' in settlement of Nebraska City account,' is a bar to the opening of the controversy between the parties relating to such contract. The controlling authorities on this subject are as follows: *Murray* v. *Toland,* 3 Johns. Ch. 569; *Philips* v. *Belden,* 2 Edw. Ch. 1; *Lockwood* v. *Thorne,* 11 N. Y. 173, 18 N. Y. 285; *Quincey* v. *White,* 63 N. Y. 370; *Samson* v. *Freedman,* 102 N. Y. 699, 7 N. E. Rep. 419; *Paper Co.* v. *Moore,* 104 N. Y. 680, 10 N. E. Rep. 861; *Davenport* v. *Wheeler,* 7 Cow. 231; *Gilchrist* v. *Association,* 66 Barb. 390.

"*Second.* Claim for damages arising out of Nebraska City contract. The evidence in the case shows that the plaintiffs failed to deliver the pipe required to finish the water-works at Nebraska City within the time limited in the contract. Deliveries were made during the months of May, June, July, August, September, and October. On the 1st of September, 1887, when the time of the defendants to complete the Nebraska City system expired, the plaintiffs were shipping pipe to Chillicothe under urgent directions of the defendants, for the purpose of completing the Chillicothe system before the 1st of September.

The defendants, being unable to complete the water-works at Nebraska City by the fixed time, September 2, 1887, procured an extension from the city authorities for two months. On the 1st of September, 1887, the plaintiffs had shipped to Nebraska City a large proportion of the pipe contracted for. The shipments during the month of August amounted altogether in money to about $19,000, while the shipments after the 1st of September amounted in money to about $6,000. The plaintiffs and defendants were bending all their energies immediately before the 1st of September towards the completion of the water-works at Chillicothe, it being distinctly understood that the Chillicothe water-works should be first completed. After the contract between plaintiffs and defendants for the delivery of pipe was made, the water-works system of Nebraska City was extended by the addition of two miles of extra line. This occasioned considerable modification in the orders for water-pipe, the effect of which would necessarily delay the plaintiffs in the delivery of pipe. The extension of this Nebraska system was made by the city council on or about the 6th of May, 1887, and it was not until about the 6th of June, 1887, that the revised list of pipe and specials was forwarded by the defendants' engineers to the plaintiffs. It is quite apparent that the extension of the water system from six miles to eight miles was not contemplated at the time of the making of the contract between plaintiffs and defendants, and that, under such circumstances, the plaintiffs should not be held strictly to the time fixed in the contract for the shipment of pipe. The evidence is not very clear as to how far the plaintiffs were delayed in the shipment of pipe necessary to complete the whole system by the addition of two miles of extra line. The addition of pipe one-third more than originally contemplated, however, should be taken into consideration upon the question of the breach of the contract for the delivery of pipe within a specified period. In spite of the failure of the plaintiffs to strictly fulfill the contract, I cannot resist the conclusion that the defendants have, by their conduct and acquiescence, and the continued receipt of pipe after the time fixed in the contract, waived a literal performance of its terms. After the 1st of September the defendants, through their representatives, urged the delivery of the balance of the pipe for the purpose of finishing the works, and received without objection the balance of the pipe during the months of September and October. On the 13th of October, 1887, the defendants wrote the plaintiffs to forward the pipe, as they ' very much desire to complete the Nebraska City works, but cannot unless pipe is sent at once.'

"*Third.* Claim for damages arising out of the contract for Chillicothe gas-pipe. As already shown, no time was fixed for the construction of the gas-works by the defendants. The defendants notified the plaintiffs, through their chief engineer, on January 6, 1887, that they had indefinite time for the gas-works, and on July 6, 1887, that ' You need not trouble yourselves about the gas-pipes for some time to come.' After the completion of the Chillicothe water-works and the Nebraska City water-works, the latter, about the 1st of November, 1887, the defendants on or about the 23d of November, 1887, wrote to the plaintiffs as follows: ' If you have the gas-pipe on hand to fill our orders for Chillicothe, and intend to ship it to us, you may do so immediately, with the understanding that we shall not be able to get you the bonds in settlement until the due issue of bonds is out, which will probably be the first week in January. If this is not satisfactory, please cancel the order, and notify us to that effect by mail, and we will make other arrangements.' In answer to that letter, the plaintiffs wrote to the defendants as follows, under date of November 25th: ' We have not the gas-pipe on hand to fill Chillicothe order, but we will proceed to make some at once, and ship as rapidly as possible, and await settlement until January, as you state.' On the 20th of November the defendants wrote to the plaintiffs as follows: ' Send forward Chillicothe gas-pipe as rapidly as possible; also, whatever iron-work may still be

required.' The effect of this correspondence is to extend the original contract so far as it related to the Chillicothe gas-works, and amounts, in substance, to a new order. I therefore hold that the plaintiffs having delivered the gas-pipe to the defendants in pursuance of such orders, and the defendants having accepted and used the pipe, they are bound to pay the contract price. The counter-claims should be dismissed, and I have come to the conclusion on the whole case that the plaintiffs are entitled to judgment for the full amount claimed."

Judgment was entered on the referee's report, and defendant Rowland N. Hazard appeals.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*Moses R. Crow,* for appellant.   *A. Taylor,* for respondents.

BRADY, J.   This action was brought upon a promissory note for $14,542.17, made by the defendants Comegys & Lewis to their own order, and indorsed by them and the defendant Hazard, and delivered before maturity to the plaintiffs for value.   The defendants Comegys & Lewis denied the allegations of the complaint, but set up two counter-claims,—one for the alleged breach of a contract made by the plaintiffs to furnish pipe for water-works at Nebraska City, and the other for an alleged breach of a contract on behalf of the plaintiffs by which they agreed to furnish pipe for works at Chillicothe.   The defendant Hazard averred that he was an accommodation indorser, setting forth the fact that the makers of it had a counter-claim against the plaintiffs, and claiming that any and all amounts due from plaintiffs to the defendants Comegys & Lewis arising from the alleged counter-claims should be deducted from the amount due upon said note, and that judgment should be rendered against them accordingly.   It appears, however, that he offered no evidence to support these allegations.   These averments of counter-claim were denied, and a settlement of the accounts of Comegys & Lewis set up by the plaintiffs in their reply.   The learned referee has discussed elaborately the questions arising upon the evidence and the facts which he found had been established. A careful and elaborate examination of the record has led to the conclusion that his findings of fact cannot be disturbed; that they are all sustained by the evidence, and so clearly that it is only necessary to state that result.   It would be a work of supererogation to go into details to demonstrate the propriety of his findings.   The opinion which was delivered by him upon the rendition of judgment is one which commends itself to our judgment upon due deliberation of the facts and circumstances of the case, and as a disposition of all the questions save one, which will be made the subject of separate consideration.   The findings of fact and conclusions of law as declared by the referee are therefore adopted and affirmed.

It may be said with great propriety that the chief legal proposition urged on behalf of the defendant Hazard is that he occupied the position of a naked surety, without consideration, for the performance by the defendants Comegys & Lewis of their contract with the plaintiffs, and that, therefore, if, by reason of the non-performance of that contract by the plaintiffs, any damages resulted to the defendants Comegys & Lewis, they were applicable to the satisfaction of the note in suit, in whole or in part, and that he had the right to insist that they should be so applied.   Indeed, the proposition is carried so far that it is insisted that, if the defendants by their dealings and arrangements with the plaintiffs waived or relinquished their right to have such damages, the defendant Hazard was deprived of a substantial right, and was therefore discharged from all liability upon the note.   And this legal attitude is founded upon the assumption that a surety may avail himself of all existing claims in favor of his principal against the plaintiff where the principal is insolvent; citing the cases of *Gillespie* v. *Torrance,* 25 N. Y. 306, and *Coffin* v. *McLean,* 80 N. Y. 560.

Admitting, for the sake of argument, that the counter-claim herein was established, and that the defendant Hazard is entitled to all the advantages springing therefrom, nevertheless there is no proof of the insolvency of the defendants Comegys & Lewis. It is true that insolvency is averred by the defendant Hazard in his answer, and that it is not denied in express terms by the plaintiffs; but there is a denial of each and every allegation of the defendants' answer in so far as it sets up a counter-claim in this action, and this is regarded as a sufficient denial, inasmuch as insolvency is a necessary element to make the counter-claim available to the surety. It is supposed that the denial is limited to the counter-claim alleged, and that the allegation of insolvency is not denied, either generally or specifically; but this is an erroneous view of the condition of the pleadings, for the reasons above stated. The adjudications mentioned, upon which the defendant Hazard relies, declare that in equity a counter-claim may be pleaded, as contemplated, where the principal is insolvent, and this makes insolvency a constituent part of such a defense. There was no proof of it, and therefore the alleged counter-claim is of no avail. No case has been cited which goes so far as to hold that, under circumstances kindred to those which marked the relations between the plaintiffs and the defendants Comegys & Lewis, they might not waive either a counter-claim or a set-off, which might otherwise have existed. In this case the doctrine invoked on behalf of the plaintiffs was one of waiver, which rests, however, upon doctrines of equity, and for that reason are further from the grasp of the surety than they otherwise would be. For these reasons, in addition to those contained in the opinion of the referee, the judgment should be affirmed. All concur.